UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRENT MORRIS,

    Petitioner,

v.

RENEE BAKER and NEVADA ATTORNEY GENERAL,

    Respondents.

Case No. 3:14-cv-00444-LRH-(WGC)

ORDER

Petitioner, an inmate in the custody of the Nevada Department of Corrections (NDOC), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his forfeiture of 90 days of good-time credit. ECF No. 2. The State filed an Answer. ECF No. 11. Morris filed a Reply. ECF No. 31. For the reasons below, the court shall deny Morris' petition for a writ of habeas corpus, dismiss this action with prejudice, and deny a certificate of appealability.

**I.**     **Background**

On July 9, 2013, Morris was notified that he was being charged in a prison disciplinary proceeding with the unauthorized use of equipment or mail and charging fees for legal services. ECF No. 12-12. On July 21, 2013, a disciplinary hearing officer found Morris guilty of both, and recommended that he forfeit 90 days of good-time credits. ECF No 12-14. That recommendation was accepted by the NDOC. ECF No. 12-15.

On November 8, 2013, Morris filed a pro se habeas petition in state court challenging the forfeiture of good-time credit. ECF No. 12-2. The state court denied his petition on December 19, 2013. ECF No. 13-1. When Morris appealed, the Supreme Court of Nevada affirmed. ECF No. 13-17.

1

Morris filed a petition for a writ of habeas corpus in federal court on May 29, 2015. ECF No.2. The State filed an Answer. ECF No. 11. Morris filed a Reply. ECF No. 31.

## II. Federal Habeas Review Standards

When a state court has adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling; that standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. *Id.* at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *Id.* at 181–88. The petitioner bears the burden of proof. *Id.* at 181.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Id.* at 16. A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *See, e.g.*, *id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). When a state court's factual findings based on the

record before it are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls, which requires federal courts to be "particularly deferential" to state court factual determinations. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Id.* at 973. Rather, as the Ninth Circuit explained, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed to be correct and the petitioner must rebut that presumption by "clear and convincing evidence." In this inquiry, federal courts may not look to any factual basis not developed before the state court unless the petitioner shows that the claim relies on either (a) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or (b) "a factual predicate that could not have been previously discovered through the exercise of due diligence," and also shows that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

When a state court summarily rejects a claim, it is the petitioner's burden to show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

## III. Discussion

### A. Ground 1

Morris argues that "his due process rights were violated when the NDOC failed to timely serve him with the notice of charges." ECF No. 2 at 3. Morris contends that, under NDOC procedures, "the 10-day limit in which to file the [notice of charges] began to run on March 12, 2013, when the alleged incident had occurred." ECF No. 2 at 6; *see* ECF No. 12-12. The Supreme Court of Nevada rejected this claim because Morris "received advance written notice of the charges."

3

ECF No. 13-17 at 2.

Indeed, that is all that is required by the U.S. Supreme Court. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) ("Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."). And the record establishes that Morris received it. The notice of charges was served on Morris on July 9, 2013. ECF No. 12-12. The hearing occurred on July 21, 2013—twelve days after Morris was notified of the charges. ECF No.12-14.

Morris' contention that waiting more than ten days to file a notice of charges violated NDOC procedures is not only incorrect, it is irrelevant. The administrative regulations provide that "action should be taken as soon after the conduct as is practicable"—and require only twenty-four-hours notice. ECF No. 12-20 at 1–2. The NDOC waited until Morris returned to NDOC custody from New Jersey to issue the notice of charges. He returned to his NDOC institution on June 13, 2013. ECF No. 12-21. That seems "practicable." But even if not, that is irrelevant. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The only question is whether not filing a notice of charges until after Morris returned to NDOC custody less than four months after the incident violated Morris' rights under the Due Process Clause. Morris points to no law supporting his position that it does, and the court cannot find any either.

The Supreme Court of Nevada's determination that Morris' due process rights were not violated by the timing of the filing of the notice of charges did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

Ground 1 provides no basis for habeas relief.

///

///

4

**B. Ground 2**

In Ground 2, Morris argues that his due process rights were violated because he was not in NDOC custody on March 12, 2013—rather, he was in the custody of the state of New Jersey. ECF No. 2 at 9. Morris contends that it violated due process for the NDOC to subject him to disciplinary proceedings based on violations of NDOC rules when his conduct did not violate the rules of the jail system of which he was in custody. *See id.* at 9–10. Citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), for the proposition that due process did not require a contrary conclusion, the Supreme Court of Nevada summarily denied this claim. See ECF No. 13-17. Therefore, it is Morris' burden to show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

The Supreme Court of Nevada could have reasonably held that this did not violate the Due Process Clause, as there is no decision of which this court is aware that holds that an inmate may not be punished for failing to comply with his home-institution's regulations when temporarily transferred to another institution. Moreover, the application of punishment here is reasonable. Morris was communicating with and charging for the legal work of prisoners in NDOC custody. Furthermore, he was receiving good-time credits towards his Nevada prison sentence for the time he was spending in New Jersey. He left for New Jersey on January 25, 2013, and returned to NDOC custody on May 17, 2013. ECF No. 12-21. For that time, he earned good-time credits at the rate of twenty days per month. ECF No. 12-25 at 7. Moreover, he was on notice from Nevada law that he had to comply with NDOC regulations while in out-of-state custody to earn these credits. *See* Nev. Rev. Stat. §§ 178.620, 209.4465(1). What is more, though, is that the Supreme Court of Nevada's interpretation of Nevada's good-time credit scheme is beyond this court's purview on federal habeas review. *See McGuire*, 502 U.S. at 67–68. At bottom, Morris does not point to, and this court cannot think of, any reason why the application of this rule here would violate Morris' due process rights, let alone clearly do so.

The Supreme Court of Nevada's determination that Morris' due process rights were not violated by being subject to discipline for violating NDOC regulations while temporarily in out-of-state custody did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

Ground 2 provides no basis for habeas relief.

**C. Ground 3**

**1. Ground 3-1**

In Ground 3-1, Morris argues that his due process rights were violated "because there was no evidence introduced at his disciplinary hearing to show that he engaged in unauthorized use of the mail, or received fees for legal services." ECF No. 2 at 12. The Supreme Court of Nevada rejected this argument because it found "[s]ome evidence supports the decision." ECF No. 13-17 at 2. Indeed, for a revocation of good-time credits to pass constitutional muster, it need only be "supported by some evidence in the record." *Hill*, 472 U.S. at 454. It was here: a prison official provided a summary of the relevant letters, and Morris essentially conceded all of the crucial factual elements while pursuing his defenses as articulated above in Grounds 1 and 2. *See* ECF Nos. 12-12, 12-14.

The Supreme Court of Nevada's holding that there was "some evidence" to support Morris' conviction did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

Ground 3-1 provides no basis for habeas relief.

**2. Ground 3-2**

Morris also contends that he was denied due process because "he was precluded from presenting a federal court document" that established that "inmates have a constitutional right to provide legal assistance to other inmates." ECF No. 2 at 12. Given that is not true, forbidding him from introducing it at the evidentiary hearing could not have violated due process. Moreover, he was not charged with simply providing legal assistance, he was charged with charging for providing legal assistance. Because the Supreme Court of Nevada summarily rejected this claim, Morris bore the burden of establishing that there was "no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see* ECF No. 13-17 at 2. This would have been a reasonable basis.

Ground 3-2 provides no basis for habeas relief.

**3. Ground 3-3**

Morris next contends that he was denied the right to view two letters, one from February 2013 and one from June 2013, that were used against him at his hearing. *See* ECF No. 2 at 13–14.

Morris fails to point to any clearly established rule that he be allowed to inspect all the evidence that was used against him. In fact, the Supreme Court in *Wolff* stated that prisoners need not have the ability to confront or cross-examine "those furnishing evidence against" them. 418 U.S. at 567–68. And while the Court recognized that, in some cases, the penological interests and concerns that mitigated against allowing confrontation and cross-examination might not be present and therefore balance towards allowing it, "the better course . . . is to leave these matters to the sound discretion of the officials of state prisons." *Id.* at 569. Contrary to Morris' argument, being able to "present documentary evidence," *id.* at 566, which *Wolff* granted prisoners a right to do, is simply not the same thing as being able to read all documentary evidence.

In fact, the Seventh Circuit has come to a similar conclusion in a case when prison officials refused to give the prisoner an exculpatory report: "It can be argued that there is no *Brady* analogy because the fact-finder in this case, the Committee, was given the report and could consider it in reaching its conclusion. After all, one of the aims of the *Brady* rule is to insure that the trier of fact considers all relevant evidence in reaching a conclusion as to guilt or innocence." *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981). All that was clearly established is that Morris was entitled to "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454. He received that. *See* ECF Nos. 12-12, 12-14.

While the denial of the letters might have violated due process on de novo review, the Supreme Court of Nevada's holding that presenting Morris with a written summary rather than the physical documents themselves did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

And even if the failure to provide these two letters violated clearly established law, a review of the audio recording of the disciplinary hearing rebuffs Morris' claim that he asked to view the letters. *See* ECF No. 12-27. In fact, the letters were discussed, as were their contents, and Morris provided no indication that he wanted any further information about them. Thus, his argument independently fails because it is most assuredly not a violation of due process to not provide documents that were not requested.

Ground 3-3 provides no basis for habeas relief.

**D. Ground 4**

In Ground 4, Morris argues that his due process rights were violated "when the hearing officer refused his request to call witnesses in his defense." ECF No. 2 at 17. The Supreme Court of Nevada rejected this argument because "the hearing officer stipulated to the substance of the testimony that would have been presented." ECF No. 13-17 at 2 n.3. Indeed, Morris wanted to call prison officials from New Jersey to testify that their prison regulations did not forbid what Morris did—the hearing officer stipulated to that point. *See* ECF No. 12-14 at 1. He also wanted to call an inmate's father to testify that Morris never personally asked the father for money—the hearing officer stipulated to this as well. *See id.* Beyond being stipulated to, both points were also not relevant to whether he charged inmates for providing legal services or mailed letters in violated of NDOC rules. Under *Wolff*, the right to call witnesses is qualified to exclude witnesses that are irrelevant or aren't necessary—here, they were both. *See Wolff*, 418 U.S. at 566–67.

Morris also contends in his federal petition that he was prevented from calling two other inmates to testify. However, the record belies this assertion. Even though the hearing officer's refusal to call the New Jersey officials and an inmate's father were noted in the summary of the disciplinary hearing, there is no evidence that he asked to call anyone else. *See* ECF No. 12-14. Moreover, the audio recording of the hearing does not support his assertion that he attempted to call these two other inmates. *See* ECF No. 12-27. He was asked if he wanted to call any other witnesses, and he said that he did not. That would have been a "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

Therefore, the Supreme Court of Nevada's holding that Morris was afforded his qualified opportunity to call witnesses did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

Ground 4 provides no basis for habeas relief.

**E. Ground 5**

In Ground 5, Morris argues that he was "denied a liberty interest and subjected to cruel and

unusual punishment as a result of the sanctions." ECF No. 2 at 21. He claims that this is so because "there was no evidence." *Id.* The Supreme Court of Nevada summarily rejected this argument. ECF No. 13-17 at 2–3. This argument fails for the same reasons that the insufficiency of the evidence argument failed in Ground 3-1 and because there was nothing cruel or unusual about the ninety days of lost good-time credit and ninety days of administrative segregation. *See Hutto v. Finney*, 437 U.S. 678, 686 (1978); *cf. Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (holding that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years, but the precise contours of that principle are "unclear applicable only in the 'exceedingly rare' and 'extreme' case").

Therefore, the Supreme Court of Nevada's holding that Morris was not subject to cruel and unusual punishment nor convicted without any evidence did not involve an unreasonable determination of fact, nor was it contrary to, or an unreasonable application of, federal law clearly established by the U.S. Supreme Court.

Ground 5 provides no basis for habeas relief.

## IV. Conclusion

IT IS THEREFORE ORDERED that Morris' petition for a writ of habeas corpus (ECF No. 2) is **DENIED** on the merits, and this action is **DISMISSED** with prejudice.[1]

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**. The Clerk of Court is directed to enter judgment, in favor of respondents and against Morris, dismissing this action with prejudice.

IT IS SO ORDERED.

DATED this 6th day of September, 2017.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[1] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). To the extent that Morris has done so in his federal reply, the court does not consider these additional claims and allegations.

9